Brian F. Quinn, Esq. (BN.: 27783)
DeCARLO & CONNOR
A Professional Corporation
101 Constitution Avenue, N W., 10th Floor
Washington, DC 20001
Telephone:     (202)589-1151
Facsimile:     (202)589-0105

Daniel M. Shanley, Esq. (Pending Pro Hac Vice)
DeCARLO & CONNOR
A Professional Corporation
533 South Fremont Avenue, Ninth Floor
Los Angeles, California 90071-1706
Telephone:     (213)488-4100
Facsimile:     (213)488-4180

Attorneys for Respondent MID-ATLANTIC
REGIONAL COUNCIL OF CARPENTERS

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| WAYNE R. GOLD, Regional Director of Region 5 of the National Labor Relations Board, for and on behalf of the NATIONAL LABOR RELATIONS BOARD,<br><br>          Petitioner,<br><br>       v.<br><br>MID-ATLANTIC REGIONAL COUNCIL OF CARPENTERS,<br><br>          Respondent. | CASE NO. 05-3147<br><br>RESPONDENT MID-ATLANTIC REGIONAL COUNCIL OF CARPENTERS' BRIEF IN OPPOSITION TO REQUEST FOR INJUNCTIVE RELIEF |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

I.  INTRODUCTION: THE GENERAL COUNSEL'S TEN PRIOR
    LOSSES, INCLUDING THE RECENT NINTH CIRCUIT DEFEAT,
    CONFIRM THAT THE GC'S THEORIES ARE WITHOUT MERIT . . . . . . . . . . . . . . 1

II. FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

III. LEGAL ARGUMENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    A.  INJUNCTION STANDARDS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    B.  SECTION 8(b)(4)(ii)(B) DOES NOT PROHIBIT THE PEACEFUL,
        STATIONARY BANNER AT ISSUE HERE . . . . . . . . . . . . . . . . . . . . . . . 9

        1.  The Constitutional Framework . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

        2.  No Deference is Owed the GC's Litigation Position . . . . . . . . . . . . . . . 11

        3.  The Supreme Court and Congress Expects Section
            8(b)(4) to be Interpreted Narrowly . . . . . . . . . . . . . . . . . . . . . . . . . . 13

        4.  The GC Fails to Show Any Affirmative Intention that
            Congress Clearly Intended to Prohibit the Peaceful,
            Truthful Stationary Banner at Issue Here . . . . . . . . . . . . . . . . . . . . . 14

            a.  What is "Picketing" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

            b.  Bannering Is Not the Same Conduct as "Actual"
                Picketing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

            c.  The GC Impermissibly Focuses on the Content of
                the Banner's Message to Justify His Strained Theories . . . . . . . . 21

        5.  The GC's Common Law Theory that the Banner's Message
            Is False Likewise Fails . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

            a.  The Union's Speech is Truthful . . . . . . . . . . . . . . . . . . . . . . . . 22

            b.  The GC's Legal Theory Fails as Well . . . . . . . . . . . . . . . . . . . . 24

    C.  THE FIRST AMENDMENT PROTECTS THE BANNER AND
        PRECLUDES THE GC's STRAINED THEORIES . . . . . . . . . . . . . . . . . . 24

1.  A Peaceful, Stationary Banner Is Protected by The First
    Amendment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

2.  The GC's Interpretation of the Act Infringes First Amendment
    Rights and Constitutes Impermissible Content-Based and
    View-Point Based Discrimination . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

3.  The "Prior Restraint" Doctrine Precludes Injunctive Relief . . . . . . . . . . 30

IV.  CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Alexander v. U.S.,*
    509 U.S. 544 (1993) ............................................................................... 30

*BE&K Construction Co. v. NLRB,*
    536 U.S. 516 (2002) ............................................................................... 13

*Bakery & Pastry Drivers Local 802 v. Wohl,*
    315 U.S. 769 (1942) ............................................................................... 15

*Benson v. UBCJA, Locals 184 and 1498,*
    337 F. Supp. 2d 1275 (D. Utah 2004) ................................................ *passim*

*Burlington N. R.R. Co. v. Brotherhood of Maint. of Way Employees,*
    481 U.S. 429 (1987) ................................................................................. 6

*Carpenters Locals 184 and 1498 (Grayhawk Development, Inc.),*
    2005 NLRB LEXIS 17 (2005) ............................................................ *passim*

*Carpenters Local Union No. 1506 (Sunstone Hotel Investors, LLC),*
    2005 NLRB LEXIS 5 (2005) .............................................................. *passim*

*Carroll v. President & Comm'rs of Princess Anne,*
    393 U.S. 175 (1968) ............................................................................... 13

*Chicago Typographical Union No. 16 (Alden Press),*
    151 N.L.R.B. 1666 (1965) ...................................................................... 18

*City of Ladue v. Gilleo,*
    512 U.S. 43 (1994) ........................................................................... 25, 27

*City of Lakewood v. Plain Dealer Publishing Co.,*
    486 U.S. 750 (1988) ..................................................................... 25, 28, 30

*Edward J. DeBartolo Corp. v. Fla. Gulf Coast Building &*
*Construction Trades Council (DeBartolo II),*
    485 U.S. 568 (1988) .......................................................................... *passim*

*Edward J. DeBartolo Corp. v. NLRB,*
    463 U.S. 147 (1983) ............................................................................... 13

*Elrod v. Burns,*
    427 U.S. 347 (1976) ............................................................ 1, 30

*Florida Gulf Coast Building and Construction Trades Council v. NLRB,*
    796 F.2d 1328 (11th Cir. 1986) ................................. 12, 14, 18, 28

*Forsyth Co. v. Nationalist Movement,*
    505 U.S. 123 (1992) ............................................................... 30

*Frisby v. Schultz,*
    487 U.S. 474 (1988) ............................................................... 26

*Galvin v. Hay,*
    361 F.3d 1134 (9th Cir. 2004) ............................................ 26, 28

*George v. National Association of Letter Carriers,*
    185 F.3d 380 (5th Cir. 1999) ................................................... 14

*Hecht Co. v. Bowles,*
    321 U.S. 321 (1944) ................................................................. 8

*Hendrix v. Amalgamated Meat Cutters Local 340,*
    555 F.2d 175 (8th Cir. 1977) ................................................... 10

*Humphrey v. International Longshoremen's Association,*
    548 F.2d 494 (4th Cir. 1977) ............................................ 6, 9, 11

*Hurley v. Irish-American Gay, Lesbian & Bisexual Group,*
    515 U.S. 557 (1995) ............................................................... 11

*Danielson v. Jt. Bd. Of Coat. Suit & Allied Gar. Wkrs. U.*
    494 F.2d 1230 (2nd Cir. 1974) ......................................... 6, 7, 8, 9

*Illinois ex rel. Madigan v. Telemarketing Associates,*
    538 U.S. 600 (2003) ............................................................... 28

*International Brotherhood of Boilermakers, etc., Local 88 v. NLRB,*
    858 F.2d 756 (D.C. Cir. 1988) ................................................ 12

*K-Mart Corp.,*
    313 N.L.R.B. 50 (1993) ......................................................... 20

*Kentov v. Sheet Metal Workers' International Association Local 15,*
    418 F.3d 1259 (11th Cir. 2005) ................................. 14, 15, 16, 17

iv

*Kohn v. Southwest Regional Council of Carpenters,*
    289 F. Supp. 2d 1155 (C.D. Ca. 2003) .................................................... *passim*

*Kovac v. Cooper,*
    336 U.S. 77 (1942) ........................................................................................ 27

*Lee v. NLRB,*
    325 F.3d 749 (6th Cir. 2003) ...................................................................... 12

*McIntyre v. Ohio Elections Commission,*
    514 U.S. 334 (1995) ...................................................................................... 28

*NAACP v. Button,*
    371 U.S. 415 (1963) ...................................................................................... 13

*NAACP v. Claiborne Hardware Co.,*
    458 U.S. 886 (1982) ................................................................................ 21, 29

*Nat'l Union of Hosp. & Health Care Employees, RWDSU,*
*Dist. 1199 v. City of New Rochelle,*
    1978 WL 1570 (S.D.N.Y. 1978) .................................................................. 11

*NLRB v. Catholic Bishop of Chicago,*
    440 U.S. 490 (1979) ........................................................................................ 3

*NLRB v. Fruit and Vegetable Packers and Warehousemen*
*Local 760 (Tree Fruits),*
    377 U.S. 58 (1964) ................................................................ 6, 14, 16, 17

*NLRB v. Sears, Roebuck & Co.,*
    421 U.S. 132 (1975) ........................................................................................ 3

*Near v. State of Minnesota,*
    283 U.S. 697 (1932) ...................................................................................... 31

*Nebraska Press Association v. Stuart,*
    427 U.S. 539 (1976) .................................................................................. 1, 30

*Organization for a Better Austin v. Keefe,*
    402 U.S. 415 (1971) .......................................................................... 29, 30, 31

*Overstreet v. Carpenters Local Union No. 1506,*
    409 F.3d 1199 (9th Cir. 2005) .......................................................... *passim*

*Overstreet v. Carpenters Local Union No. 1506,*
   2003 U.S. Dist. LEXIS 19854 (S.D. Ca. 2003) ..................................................... 2, 7, 18

*Piepenburg v. Cutler,*
649 F.2d 783 (10th Cir. 1981) .................................................................................. 30

*Planned Parenthood v. American Coalition of Life Activists,*
   290 F.3d 1058 (9th Cir. 2002) ............................................................................... 29

*Police Department of Chicago v. Mosley,*
   408 U.S. 92 (1972) ........................................................................................... 27, 30

*Procter & Gamble Co. v. Bankers Trust Co.,*
   78 F.3d 219 (6th Cir. 1996) ..................................................................................... 31

*R.A.V. v. City of St. Paul,*
   505 U.S. 377 (1992) ................................................................................................. 25

*Riley v. National Federation of the Blind,*
   487 U.S. 781 (1988) ................................................................................................. 26

*Sales Online Direct, Inc. v. Stengel,*
   2001 U.S. Dist. LEXIS 8220 (D. Md. 2001) ............................................................ 8

*Sandusky Mall Co. v. NLRB,*
   242 F.3d 682 (6th Cir. 2001) ................................................................................... 12

*Schneider v. State of New Jersey,*
   308 U.S. 147 (1939) ................................................................................................. 18

*Seay v. McDonnell Douglas Corp.,*
   427 F.2d 996 (9th Cir. 1970) ................................................................................... 11

*Service Employees Local 399 (Delta Air Lines),*
   293 N.L.R.B. 602 (1989) ......................................................................................... 24

*Sharp v. Parents in Community Action, Inc.,*
   172 F.3d 1034 (8th Cir. 1999) ................................................................................. 10

*Solien v. United Steelworkers of America,*
   593 F.2d 82 (8th Cir. 1979) ..................................................................................... 10

*Southwest Regional Council of Carpenters (Carignan Construction),*
   2004 NLRB LEXIS 74 (2004) ................................................................. 2, 17, 19, 23

*Southwest Regional Council of Carpenters and Its Local 1506 (Held Properties),*
2005 NLRB LEXIS 168 (April 5, 2005) .................................................................. *passim*

*Southwest Regional Council of Carpenters (Held Properties),*
2004 NLRB LEXIS 159 (2004) ................................................................................ 21

*Southwest Regional Council of Carpenters (New Star General Contractors),*
2004 NLRB LEXIS 660 (November 12, 2004) ...................................................... *passim*

*Southwest Regional Council of Carpenters (Richie's Installation),*
2005 NLRB LEXIS 399(August 22, 2005) ............................................................. 2, 17

*Thomas v. Chi. Park District,*
534 U.S. 316 (2002) ................................................................................................ 25

*Thornhill v. Alabama,*
310 U.S. 88 (1940) ............................................................................................. 26, 29

*UFCW Union Local 1776 (Carpenters Health & Welfare Fund),*
334 N.L.R.B. 507 (2001) ........................................................................................ 16

*U.S. v. Playboy Entertainment Group,*
529 U.S. 803 (2000) ........................................................................................... 25, 28

*United Seniors Association v. SSA,*
423 F.3d 397 (4th Cir. 2005) .................................................................................. 25

*Village of Schaumburg v. Citizens for Better Environment,*
444 U.S. 620 (1980) ................................................................................................ 13

*Weinberger v. Romero-Barcelo,*
456 U.S. 305 (1982) ............................................................................................ 8, 10

*Wilson v. Milk Drivers Local 471,*
491 F.2d 200 (8th Cir. 1974) ................................................................................. 10

*Z.J. Gifts D-2, L.L.C. v. City of Aurora,*
136 F.3d 683 (10th Cir. 1998) ............................................................................ 25, 26

I. **INTRODUCTION: THE GENERAL COUNSEL'S TEN PRIOR LOSSES, INCLUDING THE RECENT NINTH CIRCUIT DEFEAT, CONFIRM THAT THE GC'S THEORIES ARE WITHOUT MERIT**

This action concerns two bedrock constitutional protections: our Founding Fathers' command that "Congress shall make no law . . . abridging the freedom of speech," U.S. Const. amend. I., and the U.S. Supreme Court's interpretation of that command forbidding prior restraint injunctions because they are "the most serious and least tolerable infringement on First Amendment rights." Nebraska Press Ass'n v. Stuart, 427 U.S. 539, 559 (1976). Indeed, "[t]he loss of First Amendment freedoms, for even minimal periods of time, **unquestionably** constitutes irreparable injury." Elrod v. Burns, 427 U.S. 347, 373 (1976) (emphasis added).

For the past three years, the General Counsel ("GC") to the National Labor Relations Board ("Board") has repeatedly ignored these protections. For a fifth time he seeks extraordinary *pendente lite* relief prohibiting a Carpenters Union from peacefully displaying a stationary banner. Making the very same arguments based on the very same set of facts the GC has lost in **four consecutive Article III courts**. Every court has refused to issue an injunction.

Most recently, the Ninth Circuit upheld the denial of Section 10(l) relief because controlling U.S. Supreme Court precedent foreclosed the GC's theories. Overstreet v. Carpenters Local Union No. 1506, 409 F.3d 1199 (9th Cir. 2005). *See* Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Constr. Trades Council (DeBartolo II), 485 U.S. 568 (1988). Before then, three federal district courts, including one from the Tenth Circuit, held the same: (1) Benson v. UBCJA, Locals 184 and 1498, 337 F. Supp. 2d 1275 (D. Utah 2004) ("The NLRB is now 0-for-3--this court agrees with two other district courts that peacefully placing a stationary banner in a public place and handing out handbills decrying a 'labor dispute' is not a proscribed secondary boycott under the NLRA."); (2) Kohn v. Southwest Regional Council of Carpenters, 289 F.

Supp. 2d 1155, 1175 (C.D. Ca. 2003) ("Because the Regional Director has failed to show that the union's activity is threatening, coercive, or restraining within the meaning of § 8(b)(4)(ii)(B), as those words have been interpreted by the Supreme Court, this petition for a temporary injunction is denied."); and (3) Overstreet v. Carpenters Local Union No. 1506, 2003 U.S. Dist. LEXIS 19854, *18 (S.D. Ca. 2003) ("Respondent's conduct does not rise to the level of threats, coercion or restraint that characterize an unlawful secondary boycott. Petitioner has not made a prima facie showing of a § 8(b)(4)(ii)(B) violation."), aff'd 409 F.3d 1199.[1]

In addition to losing before every federal court, the NLRB's own Administrative Law courts have **six times rejected the GC's theories**: (1) Southwest Regional Council of Carpenters (Richie's Installation), 2005 NLRB LEXIS 399 (August 22, 2005); (2) Southwest Regional Council of Carpenters and Its Local 1506 (Held Properties), 2005 NLRB LEXIS 168 (April 5, 2005); (3) Carpenters Locals 184 and 1498 (Grayhawk Development, Inc.), 2005 NLRB LEXIS 17 (January 13, 2005); (4) Carpenters Local Union No. 1506 (Sunstone Hotel Investors, LLC), 2005 NLRB LEXIS 5 (January 6, 2005); (5) Southwest Regional Council of Carpenters (New Star General Contractors), 2004 NLRB LEXIS 660 (November 12, 2004); and (6) Southwest Regional Council of Carpenters (Carignan Construction), 2004 NLRB LEXIS 74 (February 18, 2004).

And prior to these **ten defeats**, the GC's own Office of Advice regularly issued Advice

---

[1]Actually, this is the GC's sixth attempt to obtain Section 10(l) relief. In September 2004, the GC rushed into federal district court in Arizona seeking an injunction on an expedited basis, but in classic forum shopping fashion, voluntarily dismissed the action thinking the Utah district court offered a better chance for success. See Overstreet v. Carpenters Local 184 and Local 1498, Case No. Civ '04 1849 PHX EHC (District of Arizona). The GC's tactics backfired because Judge Cassell refused the injunction.

Memorandum[2] concluding the same. *See, e.g.,* <u>Rocky Mountain Regional Council of Carpenters</u> <u>(Standard Drywall)</u>, 2000 NLRB GCM LEXIS 10 (2000); <u>NABET-CWA Local 51 (Mike Harvey</u> <u>Honda)</u>, 1998 NLRB GCM LEXIS 6 (1998); <u>UBC, Carpenters Local Union No. 1506, (Best</u> <u>Interiors)</u>, 1997 NLRB LEXIS 1036 (1997); <u>SEIU, Local 1877 (Service by Medallion)</u>, 1993 NLRB GCM LEXIS 30 (1993).[3]

The reason this overwhelming body of well-reasoned law rejects the current GC's theories is straightforward: With no patrolling, ambulatory picketing, blocking, violence, confrontation, intimidation, chanting, shouting or other misconduct the GC's theories find no support under controlling Supreme Court precedent. To the contrary, the <u>Catholic Bishop</u> canon of statutory interpretation compels courts to reject the GC's strained theories. *See* <u>NLRB v.</u> <u>Catholic Bishop of Chicago</u>, 440 U.S. 490, 499-501, 504 (1979).

The <u>Catholic Bishop</u> rule mandates "where an otherwise acceptable construction of a statute would raise serious constitutional problems, the Court will construe the statute to avoid such problems unless such construction is plainly contrary to the intent of Congress." <u>DeBartolo</u> <u>II</u>, 485 U.S. at 575. While the GC ignores Supreme Court precedent and the Constitution, we suspect this Court will not. *See* <u>Kohn</u>, 289 F. Supp. 2d at 1174 ("neither the ALJ, nor this Court are empowered to violate the *First Amendment's* commandments."). "In interpreting the NLRA, as in interpreting other statutes, we must consider **at the outset** whether the proposed

---

[2]Such Advice Memorandum are the "law" of the agency and are "final opinions." <u>NLRB</u> <u>v. Sears, Roebuck & Co.</u>, 421 U.S. 132, 158 (1975) ("Nor can we avoid the conclusion that Advice Memoranda directing dismissal of a charge represent the 'law' of the agency.").

[3]These ten decisions are concurrently filed herewith. *See* Compendium of Banner Decisions.

construction of the Act 'would give rise to serious constitutional questions.'" Overstreet, 409

F.3d at 1208-09 (emphasis added), *quoting* Catholic Bishop, 440 U.S. at 501.

Because the GC's theories raise serious First Amendment questions, these courts have

narrowly interpreted Section 8(b)(4) to comply with the Supreme Court's mandate. *See, e.g.,*

Overstreet, 409 F.3d at 1212 ("We conclude that interpreting § 8(b)(4)(ii)(B) to prohibit the

Carpenters' activity would pose a 'significant risk' of infringing on First Amendment rights.");

Benson, 337 F. Supp. 2d at 1281 ("In view of the court's conclusion that the NLRB has failed to

establish reasonable cause . . . the court need not reach these difficult constitutional questions.");

Kohn, 289 F. Supp. 2d at 1174-1175 ("Analysis under DeBartolo II leads to the inevitable

conclusion that the Court should avoid the serious *First Amendment* concerns . . . and find that

the union's bannering activity does not fall within the sphere of activity prohibited by §

8(b)(4)(ii)(B)." (emphasis in original)); Held Properties, 2005 NLRB LEXIS at *40 ("I find that

to avoid serious constitutional problems as discussed by the Court in DeBartolo II, supra, 485

U.S. 568 (1988), the conduct alleged as a violation of the Act in the complaints must be held to

fall outside the restrictive intentions of Congress encapsulated in Section 8(b)(4)(ii)(B).");

Grayhawk Development, 2005 NLRB LEXIS at *14 ("to accept the General Counsel's

construction of Section 8(b)(4)(ii)(B) would raise serious First Amendment free speech issues.");

New Star, 2004 NLRB LEXIS at *106 ("The General Counsel's contention that peaceful

bannering constitutes coercion under the statute creates serious First Amendment questions. . . .

In my opinion, there is certainly an acceptable interpretation of the statute that avoids the

constitutional questions and that is not plainly contrary to the intent of Congress.").

/ / /

This Article III court should follow these well-reasoned decisions in likewise rejecting the GC's strained and constitutionally insensitive theories, thereby avoiding a collision with the First Amendment. Therefore, this Court should deny the GC's Section 10(l) request.

## II.    FACTS

The challenged banner is posted on a public sidewalk--classic public fora. The location was selected to maximize the banner's public exposure. The banner's message faces out towards the public, not the employees working in the building. The banner is held up by between two and four banner-holders.

The banner is displayed without patrolling, ambulatory picketing, intimidation, or confrontation. The banner is not posted directly in front of or across any driveway or entrance. The banner does not block ingress or egress or impede access to the establishment. The passive banner holders do not chant, make loud noises, or act aggressively. They merely hand a flyer, which more fully explains the nature of the dispute, to anyone who inquires. Neither the handbills, nor the language of the banners advocate a consumer boycott against the "shamed" business. The "labor dispute" language on the banner is truthful and has been repeatedly held truthful, decisions upon which Respondent reasonably followed.

## III.    LEGAL ARGUMENTS

### A.    INJUNCTION STANDARDS

Section 8(b)(4)(ii)(B) prohibits labor organizations - and only labor organizations - from "threatening, coercing, or restraining" a business with an object of forcing or requiring that business from doing business with any other business. 29 U.S.C. § 158(b)(4)(ii)(B). Contrary to the GC's arguments, "[n]ot all labor organization conduct is threatening, coercive, or restraining

5

within the meaning of Section 8(b)(4)(ii)(B)." Held Properties, 2005 NLRB LEXIS at *23.

"The NLRA **does not** contain a 'sweeping prohibition' of secondary activity; instead it 'describes and condemns specific union conduct directed to specific objectives.'" Burlington N. R.R. Co. v. Bhd. of Maint. of Way Employees, 481 U.S. 429, 449 (1987) (internal citation omitted; emphasis added). In other words, "the prohibition of § 8(b)(4) is keyed to the **coercive nature of the conduct**, whether it be picketing or otherwise." NLRB v. Fruit and Vegetable Packers and Warehousemen Local 760 (Tree Fruits), 377 U.S. 58, 68 (1964) (emphasis added) (peaceful secondary product picketing not prohibited); DeBartolo II, 485 U.S. 568 (peaceful handbilling not prohibited).

Section 10(l) of the Act provides: "If * * * the officer or regional attorney to whom the matter may be referred has reasonable cause to believe such charge is true and that a complaint should issue, he shall, on behalf of the Board, petition any district court of the United States . . . for appropriate injunctive relief pending the final adjudication of the Board with respect to such matter. Upon the filing of any such petition the district court shall have jurisdiction to grant such injunctive relief or temporary restraining order as it deems just and proper." 29 U.S.C. § 160(l). Accordingly, the GC must first establish "reasonable cause to believe" a violation occurred, and, second, this Court may issue an injunction, but only "as it deems just and proper."

Contrary to the GC's arguments, the Fourth Circuit does not rubber stamp requests for injunctive relief or utilize the "insubstantial and frivolous" standard. In Humphrey v. Int'l Longshoremen's Ass'n, 548 F.2d 494 (4th Cir. 1977), the court adopted "**Judge Friendly's well-reasoned opinion** in Danielson v. Jt. Bd. Of Coat, Suit & Allied Gar. Wkrs. U. 494 F.2d 1230 (2nd Cir. 1974), holding that adoption of the 'insubstantial and frivolous' standard urged by some

courts would be an abandonment of traditional equitable discretion unwarranted by either the language or legislative history of Section 10(l)." Id., at 497-498 (emphasis added).[4]

In Danielson, the court overturned the district court's granting of a Section 10(l) injunction because the GC's legal theories were simply wrong and contrary to the legislative history. "What the General Counsel is attempting here is to employ a strained and wholly unnatural construction of § 8(b)(7)(C) in order to produce a result contrary to that which Senator Taft had assured was not intended by the secondary boycott provisions of the Taft-Hartley Act and Representatives Landrum and Griffin had assured was not intended by the similar provisions of the 1959 amendments which they sponsored." Id., 494 F.2d at 1237. As the numerous banner decisions demonstrate, the GC here is employing a "strained and wholly unnatural construction" of Section8(b)(4) contrary to the legislative history (and controlling Supreme Court precedent).

Judge Friendly then rejected the GC's assertion that, even if his theories were wrong, the District Court was obligated to rubber-stamp his Section 10(l) request. "The General Counsel contends that even if this be so, the district court was bound under § 10(l) to issue the injunction unless it was willing to characterize his contentions as insubstantial and frivolous. This position is based on construing 'reasonable cause to believe' in the second sentence of § 10(l) as meaning 'non-frivolous cause to believe' and on reading the third sentence to make the district court a rubber-stamp subject only to the existence of some ground for equitable relief, which almost always will exist in a picketing case." Danielson, 494 F.2d at 1239. In rejecting the GC's

---

[4]Even if the Fourth Circuit had not rejected the "insubstantial and frivolous" standard (which it has), the GC would still fail. Indeed, both the Benson district court and the Overstreet district court applied this standard and still rejected the GC's arguments. See Benson, 337 F. Supp.2d at 1277; Overstreet 2003 U.S. Dist. LEXIS at *7.

argument, Judge Friendly quoted "Mr. Justice Douglas' classic opinion in Hecht Co. v. Bowles, 321 U.S. 321, [329-330] (1944)," to explain that "A grant of *jurisdiction* to issue compliance orders hardly suggests an absolute duty to do so under any and all circumstances. We cannot but think that if Congress had intended to make such a drastic departure from the traditions of equity practice, an unequivocal statement of its purpose would have been made." Danielson, 494 F.2d at 1239-1240.[5] *See also*, Overstreet, 409 F.3d at 1206 ("the 'just and proper' standard 'reflects an intention that the district court will exercise judgment rather than simply sign off on Board requests.'").[6]

Judge Friendly searched but was unable to find that "in enacting § 10(l), Congress made such 'an unequivocal statement of its purpose' as to compel a court of equity to issue an injunction pending a decision by the Board on an unfair labor practice charge, despite its conviction that, on what had been presented to it, the court would not enforce an order finding an

---

[5]The Supreme Court's views have not changed since Justice Douglas' classic opinion. *See, e.g.,* Weinberger v. Romero-Barcelo, 456 U.S. 305, 320 (1982) ("a major departure from the long tradition of equity practice should not be lightly implied.")).

[6]As this Court set forth, the traditional equitable "factors are: (1) the likelihood of irreparable harm to the plaintiff if the preliminary injunction is denied, (2) the likelihood of harm to the defendant if the requested relief is granted, (3) the likelihood that the plaintiff will succeed on the merits, and (4) the public interest.

After deciding whether the plaintiff will suffer irreparable harm if an injunction is denied and determining the nature of the harm, if any, that defendant will suffer if the injunction is granted, the district court must balance these hardships against one another. The result of this balancing determines the degree to which the plaintiff must establish a likelihood of success on the merits. If the balance of harms 'tips decidedly in favor of the plaintiff,' it is only necessary for the plaintiff to 'raise[] questions going to the merits so serious, substantial, difficult and doubtful, as to make them fair ground for litigation and thus for more deliberate investigation.' If, however, the balance of harms is in equipoise or does not favor the plaintiff, the plaintiff must make a correspondingly higher showing of the likelihood of success." Sales Online Direct, Inc. v. Stengel, 2001 U.S. Dist. LEXIS 8220, *5-6 (D. Md. 2001) (internal citations omitted).

unfair labor practice." <u>Danielson</u>, 494 F.2d at 1241-1242. To the contrary, "a district court should apply general equitable criteria when a Board seeks an injunction" which "would include some likelihood of success." <u>Id</u>. Accordingly, "when , after full study, the district court is convinced that the General Counsel's legal theory is wrong . . . it should not issue an injunction under § 10(l)." <u>Id</u>., at 1245. The Fourth Circuit, in <u>Humphrey</u>, agreed. 548 F.2d at 498 ("a temporary injunction should not issue unless there is some reasonable possibility that the board will ultimately enter into an enforceable order.")

In light of the four consecutive Article III court defeats and the six Administrative Law court defeats the GC demonstrates no, much less a reasonable, likelihood of success on the merits. *See, e.g.,* <u>Overstreet</u>, 409 F.3d at 1208 ("Overstreet has little likelihood -- not even a 'fair chance' -- of succeeding in showing that § 8(b)(4)(ii)(B) prohibits the Carpenters' bannering activity."). Since the GC demonstrates no likelihood of success that an enforceable order could issue from the Board based on the facts and theories presented in this case, the GC's request for an injunction must be denied.

## B. SECTION 8(b)(4)(ii)(B) DOES NOT PROHIBIT THE PEACEFUL, STATIONARY BANNER AT ISSUE HERE

"Our analysis begins with the rule of substantive law which will govern the Board's ultimate resolution of the controversy." <u>Humphrey</u>, 548 F. 2d at 497.

### 1. The Constitutional Framework

As mentioned above, this Court "must consider at the outset whether the proposed construction of the Act 'would give rise to serious constitutional questions.'" <u>Overstreet</u>, 409

F.3d at 1208-09.[7] "All federal law, including the National Labor Relations Act, must be viewed with the 'free speech' protection of the First Amendment in mind." Held Properties, 2005 NLRB LEXIS at *21. If serious constitutional questions are raised, the court "'must first identify the affirmative intention of the Congress clearly expressed before concluding the Act' creates a constitutional quandary." Overstreet, at 1209 quoting Catholic Bishop, 440 U.S. at 501.

The reason the Court first looks for a clear intention from Congress is to avoid unnecessarily deciding constitutional issues. Without a clear intention, the Court is required to construe the statute to avoid the serious Constitutional issues raised. "Where an otherwise acceptable construction of a statute would raise serious constitutional problems, the Court **will** construe the statute to avoid such problems unless such construction is plainly contrary to the intent of Congress." Overstreet, at 1209 quoting DeBartolo II, 285 U.S. at 575. Because the GC

///

---

[7]It is anticipated that the GC may argue in its Reply that Solien v. United Steelworkers of Am., 593 F.2d 82, 88 n.3 (8th Cir. 1979), cert. denied, 444 U.S. 828 (1979), provides that this Court can ignore this court's traditional equitable principles, including the Constitution at the prior restraint stage. The GC has done this unfair trick at the other Section 10(l) proceedings it instituted. However, the GC ignores that a later Eight Circuit panel explained that this approach was wrong, particularly after the Supreme Court's decision in Weinberger v. Romero-Barcelo, 456 U.S. 305, 311-20 (1982) (When a federal statute authorizes injunctive relief, the presumption is that Congress intends the courts to exercise their traditional equitable discretion.):

> Our opinions applying § 10(1) contain language suggesting that if the Board shows the "reasonable cause" referred to in that statute, traditional equitable principles need not be examined to determine if injunctive relief would be "just and proper." See Solien v. United Steelworkers of Am., 593 F.2d 82, 87 (8th Cir.), cert. denied, 444 U.S. 828, 62 L. Ed. 2d 36, 100 S. Ct. 54 (1979); Hendrix v. Amalgamated Meat Cutters Local 340, 555 F.2d 175, 178 (8th Cir. 1977); Wilson v. Milk Drivers Local 471, 491 F.2d 200, 203 (8th Cir. 1974). After Romero-Barcelo, it would be inappropriate to rely upon that language without carefully considering the facts of those cases and the equitable considerations typically relevant to § 10(1) injunctions.

Sharp v. Parents in Community Action, Inc., 172 F.3d 1034, 1039 (8th Cir. 1999). Therefore, any reliance on Solien is misplaced.

10

does not (and has never been able to) identify any clear affirmative intent of Congress to prohibit a peaceful stationary banner, this Court must construe the statute to not prohibit them.

### 2. No Deference is Owed the GC's Litigation Position

In analyzing the issues raised in this case, it is important to understand that, contrary to the GC's arguments, **no deference is owed** even a final NLRB decision, much less the litigation position of an Executive Department official. Overstreet, 409 F.3d at 1208 ("ordinary principles of deference to Board interpretation of the Act do not apply here."); *see also,* id., at 1209-10. The reason is simple, "this case's First Amendment backdrop prevents us from taking into account any ultimate deference to the Board . . . ." Id., at 1208, n. 12. This "is a rule of federal constitutional law." Hurley v. Irish-American Gay, Lesbian & Bisexual Group, 515 U.S. 557, 568 (1995).[8] *See also,* DeBartolo II, 485 U.S. at 577 (courts "*independently* inquire whether there is another interpretation, not raising these serious constitutional concerns, that may fairly be ascribed to § 8(b)(4)(ii)(B).").

While ordinarily the "Board's expertise in labor matters may be particularly useful," Humphrey, 548 F. 2d at 498, the "Board's special expertise in labor controversies does not extend to the interpretation of the Constitution. This field has traditionally been reserved to the courts." Seay v. McDonnell Douglas Corp., 427 F. 2d 996, 1002-03 (9th Cir. 1970); Nat'l Union

---

[8]"This obligation rests upon us simply because the reaches of the First Amendment are ultimately defined by the facts it is held to embrace, and we must thus decide our ourselves whether a given course of conduct falls on the near or far side of the line of constitutional protection." Id.

of Hosp. & Health Care Employees, RWDSU, Dist. 1199 v. City of New Rochelle, 1978 WL 1570, *4 (S.D.N.Y. 1978) ("Constitutional interpretation, traditionally reserved to the courts, is not an area in which the NLRB exercises expertise."). Indeed, "because constitutional decisions are not the province of the NLRB (or the NLRB's Regional Director or General Counsel), the tasks of evaluating the constitutional pitfalls of potential interpretations of the Act and of interpreting the Act to avoid those dangers are committed *de novo* to the courts." Overstreet, 409 F.3d at 1209 (parenthetical and emphasis in original). This is why even "a finding of statutory coercion would not control the First Amendment analysis." Florida Gulf Coast Bldg. and Constr. Trades Council v. NLRB, 796 F.2d 1328, 1335 (11th Cir. 1986), *aff'd sub nom* DeBartolo II.

Similarly, federal courts "give **no deference** to the Board's interpretation of Supreme Court and [] Circuit decisions, reviewing those holdings de novo." Lee v. NLRB, 325 F.3d 749, 754 (6th Cir. 2003) (emphasis added). *See also*, Sandusky Mall Co. v. NLRB, 242 F.3d 682, 692 (6th Cir. 2001) ("We do not defer to the Board with respect to the interpretation of judicial precedent."); Int'l Brotherhood of Boilermakers, etc., Local 88 v. NLRB, 858 F.2d 756, 759 (D.C. Cir. 1988) ("Judicial deference is not a necessary factor in our resolution of this case, however, inasmuch as the conclusion reached by the NLRB appears to be compelled by the logic of the relevant Supreme Court decisions.").

Accordingly, the GC erroneously argues that his litigation position – which has been ten times rejected – is entitled to any deference under the facts and law at issue here.

/ / /

/ / /

/ / /

3.    The Supreme Court and Congress Expects Section 8(b)(4) to be
       Interpreted Narrowly

In DeBartolo I, the Supreme Court cautioned the Board that "when Congress legislates in a fashion that restricts communicative activity, **it expects the statutory language to be construed narrowly.**" Edward J. DeBartolo Corp. v. NLRB, 463 U.S. 147, 157 (1983) (emphasis added). Because the Board ignored the Supreme Court (like the GC does here), when the case made it back five years later, the Court reiterated: the prohibitions on threats, coercion, and restraints are "'nonspecific, indeed vague,' and [thus] **should be interpreted with 'caution' and not given a 'broad sweep.'**" DeBartolo II, 485 U.S. at 578 (emphasis added). The Supreme Court's views about this language has not changed. BE&K Constr. Co. v. NLRB, 536 U.S. 516, 536 (2002). See also, Overstreet, 409 F.3d at 1209-10.

The Supreme Court's concerns regarding an over broad approach to Section 8(b)(4) is grounded in long-established First Amendment jurisprudence. Any restraint on First Amendment freedoms "must be couched in the narrowest terms that will accomplish the pin-pointed objective permitted by the constitutional mandate." Carroll v. President & Comm'rs of Princess Anne, 393 U.S. 175, 183 (1968). See also, Village of Schaumburg v. Citizens for Better Environment, 444 U.S. 620, 637 (1980) (The government must pursue its goals "by narrowly drawn regulations designed to serve those interests without unnecessarily interfering with First Amendment freedoms."); NAACP v. Button, 371 U.S. 415, 438 (1963) ("Broad prophylactic rules in the area of free expression are suspect. Precision of regulation must be the touchstone . . ."). Even when discussing "actual" picketing, the Supreme Court cautioned that "a

/ / /

13

broad ban against peaceful ["actual"] picketing might collide with the guarantees of the First Amendment." Tree Fruits, 377 U.S. at 63 (secondary "picketing" not prohibited).

4.    The GC Fails to Show Any Affirmative Intention that Congress Clearly Intended to Prohibit the Peaceful, Truthful Stationary Banner at Issue Here

As the numerous decisions hold, including the Ninth Circuit, "interpreting §8(b)(4)(ii)(B) to prohibit the Carpenters' activity would pose a 'significant risk' of infringing First Amendment rights." Overstreet, 409 F.3d at 1212. E.g., Benson, 337 F. Supp. 2d at 1281;[9] Kohn, 289 F. Supp. 2d at 1174-1175; Sunstone Hotel Investors, 2005 NLRB LEXIS at *60; New Star, 2004 NLRB LEXIS at *106. However, the GC fails to meet its burden to demonstrate a clear affirmative intent of Congress to prohibit the peaceful, stationary banner at issue here. Neither the statute's language, nor legislative history, nor Supreme Court precedent supports the GC.

To the contrary, only "ambulatory picketing" - "walking in a line" to "create a symbolic barrier" - was the isolated conduct that Congress clearly intended to prohibit. Overstreet, 409 F.3d at 1213. "As the [Supreme] Court explained (citing relevant legislative history), a 'union can hand out handbills at the shop, can place advertisements in newspapers, can make announcements over the radio, and can carry on *all publicity short of having ambulatory picketing in front of a secondary site.*'" Benson, 337 F. Supp. 2d at 1278 (emphasis in original), quoting DeBartolo II, 485 U.S. at 587. See also, George v. Nat'l Ass'n of Letter Carriers, 185 F.3d 380, 389 (5th Cir. 1999) (same); Florida Gulf Coast BCTC, 796 F.2d at 1344 (same).

Recently, the Eleventh Circuit in Kentov v. Sheet Metal Workers' Int'l Ass'n Local 15, 418 F.3d 1259 (11th Cir. 2005) made the same point when it refused to apply Overstreet to a labor

---

[9]The GC chose not to appeal this decision.

union's mock funeral procession because it patrolled across a driveway entrance. In agreeing with Overstreet's holding, Kentov pointed out that the Ninth Circuit "repeatedly noted that the **union did not engage in any picketing or patrolling** and acknowledged that picketing and patrolling may be enjoined." Id., 418 F.3d at 1265, n. 7 (emphasis added). The Kentov court also favorably cited the Utah District Court's decision in Benson, 337 F. Supp. 2d at 1278-1279, for the same point. Id. The GC does not even mention the Kentov decision.

Rather than address the legislative history, the GC continues his *ipse dixit*. First, he labels the banner "picketing." From this erroneous label, he argues that because "picketing" is per se coercive, so is the banner. Misleading labels, however, will not talismatically save the GC's unsupported and constitutionally insensitive theories. Nor will ignoring unfavorable law.

### a.   What is "Picketing"

In DeBartolo II, the Supreme Court explained why Congress could sometimes prohibit picketing: "picketing is 'a mixture of conduct and communication' and the conduct element 'often provides the most persuasive deterrent to third persons about to enter a business establishment.'. . .'Publication in a newspaper, or by distribution of circulars, may convey the same information or make the same charge as do those patrolling a picket line. But the very purpose of a picket line is to exert influences, and it produces consequences, different from other modes of communication.'" Id., 485 U.S. at 580 (citation omitted). *See also*, Bakery & Pastry Drivers Local 802 v. Wohl, 315 U.S. 769, 776-777 (1942) (Douglass, J., concurring) ("Picketing by an organized group is more than free speech, since it involves patrol of a particular locality and since the very presence of a picket line may induce action of one kind or another, quite irrespective of the nature of the ideas which are being disseminated."). "The loss of customers

15

because they read a handbill urging them not to patronize a business, and not because they are intimidated by a line of picketers, is the result of mere persuasion, and the neutral who reacts is doing no more than what its customers honestly want it to do." DeBartolo II, at 580.[10]

Thus, when Congress seeks to regulate "actual" picketing, it focuses narrowly on the coercive conduct involved, not the talismatic label given: the "presence of a picket line," "patrolling a picket line," "intimidation by a line of picketers," and "ambulatory picketing" - "walking in a line" to "create a symbolic barrier." "As in DeBartolo, the Carpenters' bannering does not involve patrolling in front of an entrance way and therefore erects no symbolic barrier in front of the Retailers' doorways. Nor did the Carpenters place their banners so as to create any physical barrier blocking the entrances to the Retailers or the walkways approaching those entrances. Nor is there anything about the Carpenters' members' behavior that could be regarded as threatening or coercive -- no taunting, no massing of a large number of people, no following of the Retailers' patrons." Overstreet, 409 F. 3d at 1211. Cf., Kentov, 418 F.3d at 1265 (easily concluding that patrolling across driveway entrance was "functional equivalent of picketing").[11]

---

[10]Here, the banner does not even urge a boycott. It merely "shames" a business.

[11]Because the GC's theories lack support, he falsely argues that all secondary picketing is coercive. The Board, however, has already rejected the GC's argument. "[General Counsel] argues that all picketing is coercive, the Union picketed the Carpenters (i.e., the Council), the Council is a neutral employer, and therefore the Union restrained or coerced a neutral employer in violation of Section 8(b)(4)(B). We reject his syllogism. Section 8(b)(4)(ii)(B) does not outlaw picketing at a secondary site per se." UFCW Union Local 1776 (Carpenters Health & Welfare Fund), 334 NLRB 507, 508 (2001). "When Congress meant to bar picketing per se, it made its meaning clear; for example, §8(b)(7) makes it an unfair labor practice, 'to picket or cause to be picketed . . .any employer . . .' In contrast, the prohibition of § 8 (b)(4) is keyed to the coercive nature of the conduct, whether it be picketing or otherwise." Tree Fruits, 377 U.S. at 68. "Tree Fruits [thus] makes untenable the notion that *any* kind of handbilling, picketing, or other appeals to a secondary employer to cease doing business with the employer involved in the labor dispute is 'coercion' within the meaning of § 8(b)(4)(ii)(B) if it has some economic impact

### b. Bannering Is Not the Same Conduct as "Actual" Picketing

A repeatedly found, a peaceful, stationary banner is not picketing. <u>Overstreet</u>, 409 F.3d at 1213-14. *See also*, <u>Kentov</u>, 418 F.3d at 1265, n. 7 (agreeing bannering is not picketing); <u>Richie's Installation</u>, 2005 NLRB LEXIS at *25 ("I reject General Counsel's argument that the Respondent's bannering herein constituted picketing or signal picketing. I find that the bannering is more akin to use of billboards, newspaper ads or handbills than traditional picketing, whether ambulatory or a substitute for patrolling pickets."); <u>New Star</u>, 2004 NLRB LEXIS at *86 ("I do not believe that bannering as occurred in this case constituted picketing.") & <u>id.</u>, at *107 ("the Respondents' handbilling and display of the banners was pure speech unaccompanied by non-speech conduct."); <u>Carignan Construction</u>, 2004 NLRB LEXIS at *46-47 ("I conclude from those facts that bannering, as described here, is not picketing. Neither is it the functional equivalent of picketing. It is more in the nature of billboard advertising."); <u>Sunstone Hotel Investors</u>, 2005 NLRB LEXIS at *59 ("I find and conclude that the bannering involved herein is simply not the legal equivalent of picketing for purposes of Section 8(b)(4)(B) analysis."); <u>Held Properties</u>, 2005 NLRB LEXIS at *38-39 ("I find that the bannering under challenge herein differs from traditional picketing in several significant ways.").

The reason the courts overwhelmingly conclude that a peaceful stationary banner is not picketing is because the Supreme Court requires some form of confrontational and intimidating conduct. <u>DeBartolo II</u>, 485 U.S. at 580; <u>Tree Fruits</u>, 377 U.S. at 63. Indeed, the NLRB also requires this: "One of the **necessary conditions** of 'picketing' is **a confrontation** in some form between union members and employees, customers, or suppliers who are trying to enter the

on the neutral." <u>DeBartolo II</u>, 485 U.S. at 579 (emphasis in original).

employer's premises." <u>Chicago Typographical Union No. 16 (Alden Press)</u>, 151 NLRB 1666, 1669 (1965) (emphasis added) (patrolling not resting at any one particular location not confrontational or "picketing").

Here, however, there is no confrontation. Nor does the mere presence of banner holders mysteriously convert otherwise non-picketing conduct into "confrontation" or "coercion" because the Supreme Court in *DeBartolo II* rejected this argument. <u>Overstreet</u>, 409 F.3d at 1214 (pointing out that the handbillers in *DeBartolo II* "were very much on the scene, 'at all four entrances'").[12] *See also,* <u>Grayhawk Development</u>, 2005 NLRB LEXIS at *12 ("I conclude that the mere presence of a union representative, even one who occasionally passes out handbills, is not sufficient to make a stationary sign a picket within the meaning of Section 8(b)(4)(ii)(B)."); <u>New Star</u>, 2004 NLRB LEXIS at *107 ("the Unions did not engage in any conduct that would cause the bannering to be considered tantamount to picketing. There was nothing confrontational about the bannering.").

"There was no confrontation created by the banners under the facts of this case. Any impact by the banners was caused by their message, not by the presence of the banner handlers." <u>New Star</u>, 2004 NLRB LEXIS at *90. *See also,* <u>Overstreet</u>, 2003 U.S. LEXIS at *16 ("The

---

[12]Such an argument was also rejected by the Eleventh Circuit: "Fully protected speech usually involves the physical presence of the speaker and reasonable content-neutral time, place, or manner restrictions may be placed on fully protected speech because of, among other reasons, the physical presence of the speaker or those listening to him. *See, e.g.,* <u>Schneider v. State of New Jersey</u>, 308 U.S. 147, 160-61, 60 S. Ct. 146, 150, 84 L. Ed. 155 (1939) ('[A] person could not exercise this liberty by taking his stand in the middle of a crowded street, contrary to traffic regulations, and maintain his position to the stoppage of all traffic.'). In this case, there is no indication in the record that the people distributing the handbills outside the mall were pressuring or harassing the consumers entering the mall. Thus, we are not faced with the situation where the distribution of handbills took on some of the aspects of picketing." <u>Florida Gulf Coast Bldg.</u>, 796 F.2d at 1334 n.6, *aff'd* <u>DeBartolo II</u>, 485 U.S. at 580.

banner activity lacks the confrontational, sometimes intimidating conduct associated with traditional picketing."); Benson, 337 F. Supp. 2d at 1278 (the GC fails to prove the "banners provided any 'deterrent' to individuals who want to enter the businesses in question."); Grayhawk Development, 2005 NLRB LEXIS at *11 ("Here there was no confrontation of any kind between those who were attending the banner (and handbilling) and any employee, customer or supplier."). Similarly, reading a message does not convert the message into coercive conduct. Sunstone Investors, 2005 NLRB LEXIS at *59 ("the banners herein simply labeled the identified disputant as shameful. A word derisive perhaps, but not one immediately cognizable as a traditional labor organization picket sign admonition which is easily held to be a threat, coercion or restraint.").

"Here we have the functional equivalent of the handbilling that the Supreme Court approved in *DeBartolo II*." Benson, 337 F. Supp. 2d at 1278. Moreover, "[a]t oral argument, the **NLRB conceded** that it would be constitutionally permissible for the Union to erect a billboard - - with the same message -- twenty feet from the entrance of a secondary business. **Essentially the Union has combined two constitutionally protected activities** -- use of a billboard to publicize their message and handbilling. When these two protected activities do not involve threats, coercion, or restraint, there is no violation of the statute." Id., at 1279 (emphasis added).

"With banners, as with billboards, people are less likely to be intimidated by the mere presence of the banners, and more likely to read and consider the message on the banners." New Star, 2004 NLRB LEXIS at *87. *See also*, Id., at *93 ("I am convinced that the bannering in question constituted non-picketing activity analogous to a billboard or to handbilling."); Carignan Construction, 2004 NLRB LEXIS at *46-47 ("conclud[ing] from those facts that

bannering, as described here, is not picketing. Neither is it the functional equivalent of picketing. It is more in the nature of billboard advertising.").

The selective cases relied on by the GC are inapplicable because they "never analyze the First Amendment implications of their statutory analyses." Overstreet, 409 F.3d at 1214. Moreover, as further explained in Sunstone Hotel Investors, 2005 NLRB LEXIS 5, these cases are factually inapplicable: "In each of these cases there had been previous traditional picketing that involved patrolling with typical picket signs (*Stoltze Land & Lumber Co., Lawrence Typographical Union No. 570, Jeddo Coal Co., Telephone Man, We're Associates supra*), or some other form of coercion, including threatening to use up to 200 men to shut a job site down (*Traux-Traer Coal Co., supra*). Also in *K-Mart Corp.*, 313 NLRB 50 (1993), a case involving banners, the Board affirmed the decision of the ALJ who found that the placement of three foot by six foot and three foot by twelve foots banners together with handbilling of consumers by 12 to 28 union supporters at the entrance to a K-Mart store violated 8(b)(4)(ii)(B) of the Act. The ALJ found the union's conduct went beyond peaceful persuasion and was accompanied by other coercive conduct including a demonstration by up to 50 union supporters in the K-Mart parking lot, parading, chanting with a bullhorn, blocking access to shopping carts and lying in front of oncoming vehicles in the parking lot." Id., at *24-25. Accordingly, the two ALJ decisions that relied on these cases to find the banners to be picketing are erroneously decided.

Similarly without support is the GC's signal picketing theory. *See, e.g.,* Overstreet, 409 F.3d at 1215-16 ("Attaching the term 'signal picketing' to the union's behavior in this case is inaccurate and, as such, not pertinent to the legal analysis".); Sunstone Hotel Investors, 2005 NLRB LEXIS at *53 ("The banners simply are not a signal or pretense for any other union action

or conduct."); <u>Grayhawk Development</u>, 2005 NLRB LEXIS at *12-13 ("To conclude a stationary sign is a 'signal picket' would require concluding that a billboard is likewise a 'signal picket'; however, the General Counsel has conceded that a billboard would be permissible.").[13]

Therefore, mislabeling a banner "picketing" under stale definitions is nothing more than an attempt to distort reality. This is something the First Amendment abhors.[14] For these reasons, the GC fails to establish the banner violates Section 8(b)(4)(ii)(B).

### c. The GC Impermissibly Focuses on the Content of the Banner's Message to Justify His Strained Theories

Because the GC's theories are flawed he is forced to impermissibly focus on the message in an attempt to justify his constitutionally insensitive brand of censorship: "the Regional Director seems to claim that persuasive speech is prohibited speech. But the Supreme Court has made clear that 'economic coercion' in this sense does not rise to a statutory violation, and that some sort of intimidation is required before speech-related activities will transgress the prohibitions of § 8(b)(4)(ii)(B)." <u>Kohn</u>, 289 F. Supp. 2d at 1167. "Since he can point to no misbehavior at the banner site, the Regional Director concentrates his attention on the 'the intent

---

[13]Moreover, one of the ALJ decisions that found in favor of the GC's positions (because it felt compelled to follow stale and inapplicable Board law), specifically rejected the GC's "signal picketing" and false speech arguments. <u>Southwest Regional Council of Carpenters (Held Properties)</u>, 2004 NLRB LEXIS 159, *26 (2004) (the General Counsel's "signal picketing theory is without merit."); <u>id.</u> at *27 ("Contrary to [General Counsel], I do not believe that the language on the banner was, in fact, false."); <u>id.</u> at *29 ("I do not believe the language of the banner constituted coercion or restraint within the meaning of Section 8(b)(4)(ii)."). Therefore, this decision is much more supportive of the Respondent's positions than against.

[14]"Still it is of prime importance that no constitutional freedom, least of all the guarantees of the Bill of Rights, be defeated by insubstantial findings of fact screening reality. That is why this Court has the ultimate power to search the records in the state courts where a claim of constitutionality is effectively made." <u>NAACP v. Claiborne Hardware Co.</u>, 458 U.S. 886, 924 (1982) (quotation and citation omitted).

of the banner language' in arguing that the union's banner display violates § 8(b)(4)(ii)(B). (E.g., Memo at 14.) This focus is troubling because it is directed not at the union members' conduct, but necessarily at the content of their message. For that reason, the Regional Director's effort to stifle the message collides head-on with First Amendment principles that preclude prior restraints and content-based limitations on the display of signs, banners, and the like." Id., at 1166-67.

"Instead of finding coercion in the Union's actions, the NLRB focuses on the Union's *message*, -- that the Union's banners might end up convincing the public to urge businesses not to hire New Star and Oakland. This is precisely the argument *DeBartolo II* rejected." Benson, 337 F. Supp. 2d at 1278-79. "In sum, the Regional Director does not contend or show that the union representatives holding the banner patrol, shout, block entrances, or otherwise act aggressively. Thus, his attack **impermissibly focuses on the presence of the banner and on the message it conveys**, not on the only proper subject for regulation -- the conduct of the union members at the secondary site. Since the Supreme Court, in DeBartolo II, construed § 8(b)(4)(ii)(B) to exclude from its sweep nonthreatening speech activities conducted at secondary sites like Silver Star Cadillac, the Regional Director's contention that the banner constitutes a threat, restraint, or coercion finds no support in controlling case law." Kohn, 289 F. Supp. 2d at 1168 (emphasis added).

     5.     The GC's Common Law Theory that the Banner's Message Is False Likewise Fails

     a.     **The Union's Speech is Truthful**

Simply put, "the Carpenters' banners did not contain false assertions, and therefore, were not fraudulent." Overstreet, 409 F.3d at 1218. *See also, e.g.*, Benson, 337 F. Supp. 2d at 1280

("the banners truthfully reveal to the public what would commonly be understood to be a kind of labor dispute -- e.g., a dispute about whether the businesses in question should continue to work with Okland and New Star."); <u>Kohn</u>, 289 F. Supp. 2d at 1169 ("the Regional Director has failed to show that the union's banner is false in fact."); <u>New Star</u>, 2004 NLRB LEXIS at *97 ("there is nothing untruthful about the Unions naming these entities on the banners and indicating the existence of a labor dispute."); <u>Carignan Construction</u>, 2004 NLRB LEXIS at *34 ("it is appropriate to observe that the 'labor dispute' language is **not false. In actuality it is a true statement**.") (emphasis added)).

The reason the banner is not false is because "the presence of *any* labor dispute is determinative of the question whether the Carpenters' assertion of a 'labor dispute' was misleading to the public." <u>Overstreet</u>, 409 F.3d at 1216 (emphasis in original). Secondaries "are parties to any labor dispute as defined by § 2(9). Therefore, General Counsel's charge that the banners are false when they announce 'labor dispute' is inconsistent with the statutory definition." <u>Carignan Construction</u> 2004 NLRB LEXIS at *35. *See also*, <u>Sunstone Investors</u>, 2005 NLRB LEXIS at *54-55 ("the banner references to 'labor dispute' in association with the names of the neutrals as described above are not fraudulent, but rather true in the sense that they are consistent with the quoted definitional language of Section 2(9) of the Act.").

The <u>Overstreet</u> district court further explained, "Notably, Petitioner does not dispute that the union has a labor dispute with the secondaries. Rather, in the reply brief, Petitioner raises the distinction between primary and secondary labor disputes. 'The argument is that the conduct at issue constitutes an attempt by Respondent to fraudulently represent to consumers that Respondent as a *primary* labor dispute with the bannered [secondary] persons.' Pet's Reply at 5

23

(emphasis in original). However, the typical consumer cannot be expected to know the NLRA definition of 'labor dispute,' nor understand the distinction between primary and secondary labor disputes. Even if the banner were to read 'secondary labor dispute' rather than 'labor dispute,' the effect would be the same as to the general public. The Court finds the banners are not fraudulent." Id., 2003 U.S. Dist. LEXIS at *14. *See also,* Kohn, 289 F. Supp. 2d at 1169 (explaining that the Overstreet district court's analysis was "astutely observed").

### b. The GC's Legal Theory Fails as Well

False speech is simply not proscribed by Section 8(b)(4)(ii)(B). As explained by the Kohn court, "That the First Amendment does not protect false statements if made with malicious intent, as described by the New York Times Court, does not mean that such statements are prohibited by § 8(b)(4)(ii)(B) even if not otherwise threatening, coercive, or restraining." Id., 289 F. Supp. 2d at 1168-69. In fact, the NLRB has held this. *See* Service Employees Local 399 (Delta Air Lines), 293 NLRB 602, 602-603 (1989) ("[T]he Respondent did not engage in proscribed conduct under Section 8(b)(4)" even though "the Board found that the use of the information tended to be misleading as to the nature of the primary dispute."). Therefore, the GC's strained theory is contrary to controlling Board law.

### C. THE FIRST AMENDMENT PROTECTS THE BANNER AND PRECLUDES THE GC's STRAINED THEORIES

#### 1. A Peaceful, Stationary Banner Is Protected by The First Amendment

The GC's interpretation of the "'nonspecific, indeed vague,'" statute, DeBartolo II, 485 U.S. at 578, goes beyond merely constricting the breathing room essential for public speech - it

takes one's breath away.[15] It is beyond argument that "signs are a form of expression protected by the Free Speech Clause," City of Ladue v. Gilleo, 512 U.S. 43, 48 (1994), and the GC's interpretation raises serious First Amendment questions. *See, e.g.,* Overstreet, 409 F.3d at 1212; New Star, JD(SF)-76-04, pg. 40 ("The General Counsel's contention that peaceful bannering constitutes coercion under the statute creates serious First Amendment questions"). This is because "governmental limitations which limit expressive interests strike 'at the heart of the First Amendment.'" Z.J. Gifts D-2, L.L.C. v. City of Aurora, 136 F.3d 683, 686 (10th Cir. 1998).

"The First Amendment's guarantee of 'the freedom of speech, or of the press' prohibits a wide assortment of government restraints upon expression." Thomas v. Chi. Park Dist., 534 U.S. 316, 320 (2002). "The First Amendment generally prevents government from proscribing speech, or even expressive conduct, because of disapproval of the ideas expressed. Content-based regulations are presumptively invalid." R.A.V. v. City of St. Paul, 505 U.S. 377, 382-382 (1992). "Laws designed or intended to suppress or restrict the expression of specific speakers contradict basic First Amendment principles." U.S. v. Playboy Entertainment Group, 529 U.S. 803, 812 (2000).

In City of Lakewood v. Plain Dealer Publishing Co., 486 U.S. 750 (1988), the Supreme Court explained, "In determining whether expressive conduct is at issue in a censorship case, we

---

[15]"A statute can be impermissibly vague for either of two independent reasons. First, if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits. Second, if it authorizes or even encourages arbitrary and discriminatory enforcement." United Seniors Ass'n v. SSA, 423 F.3d 397, 408 (4th Cir. 2005). A statute the Supreme Court has already characterized as non-specific and vague certainly qualifies, in the First Amendment context, as one that fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits. More so since the GC at one time determined that such bannering did not violate the statute. *See, e.g.,* Rocky Mountain Regional Council of Carpenters (Standard Drywall), 2000 NLRB GCM LEXIS 10 (2000).

do not look solely to the time, place, or manner of expression, but rather to whether the activity in question is commonly associated with expression." Id., at 769. In Lakewood, "[t]he actual 'activity' at issue is the circulation of newspapers, which is constitutionally protected. . . . So here, the First Amendment is certainly implicated by the City's circulation restriction; the question we must resolve is whether the First Amendment is abridged." Id. Here, the peaceful banner is posted on a public sidewalk, "the archetype of a traditional public forum." Frisby v. Schultz, 487 U.S. 474, 480 (1988). The banner's message is directed toward the public informing them of a "labor dispute" and "shaming" the secondary for its involvement in front of its office. Messages related to labor disputes have long been a matter of "public concern" protected by the First Amendment. See, e.g., Thornhill v. Alabama, 310 U.S. 88, 104-105 (1940).

Based upon these undisputed facts, it is undeniable that the actual activity in question is associated with expression and the government's attempt to limit such activities "strike 'at the heart of the First Amendment.'" Z.J. Gifts, 136 F.3d at 686. Indeed, "individual choice of both communicative aspects, message and manner of presentation, is critical. The Supreme Court has so recognized, making clear that 'the First Amendment mandates that we presume that speakers, not the government, know best what they want to say and how to say it.'" Galvin v. Hay, 361 F.3d 1134, 1144 (9th Cir. 2004), quoting Riley v. Nat'l Fed'n of the Blind, 487 U.S. 781, 790-91 (1988). "The [Supreme] Court has recognized that location of speech, like other aspects of presentation, can affect meaning of communication and merit First Amendment protection for that reason." Galvin, 361 F.3d at 1144.

/ / /

26

Therefore, the question this court would have resolve is, Whether the First Amendment is abridged under the GC's unsupported interpretation of Section 8(b)(4)(ii)?

2. The GC's Interpretation of the Act Infringes First Amendment Rights and Constitutes Impermissible Content-Based and View-Point Based Discrimination

"[T]he General Counsel's view of Section 8(b)(4)(ii)(B), under the circumstances of this case, constitute an overly broad interpretation, which would tend to abridge the First Amendment." New Star, 2004 NLRB LEXIS at *102. *See also,* Kohn, 289 F. Supp. 2d at 1166-1167 (the GC "collides head-on with First Amendment principles that preclude prior restraints and content-based limitations on the display of signs, banners and the like."). This is so for a number of reasons.

"First Amendment jurisprudence establishes that individuals ordinarily have the constitutional right to communicate their views in the presence of individuals they believe are engaging in immoral or hurtful behavior." Overstreet, 409 F.3d at 1211. "[B]illboards and signs are generally accorded full First Amendment protection." Id. *See also*, City of Ladue, 512 U.S. at 48. In addition, because Section 8(b)(4)(ii) applies to only labor organizations, the GC necessarily seeks to censor and restrain only one type of speaker. All other individuals or groups can display an identical banner (or even picket) without fear of government restraint.

Yet, "[t]he right of free speech is guaranteed every citizen that he may reach the minds of willing listeners and to do so there must be an opportunity to win their attention." Kovac v. Cooper, 336 U.S. 77, 88 (1942). The "government must afford all points of view an equal opportunity to be heard." Police Dep't of Chicago v. Mosley, 408 U.S. 92, 96 (1972) (law favoring labor picketing unconstitutional). It "does not depend upon the identity of its source,

27

whether corporation, association, union, or individual." McIntyre v. Ohio Elections Comm'n, 514 U.S. 334, 353 (1995). In fact, "a law or policy permitting communication in a certain manner for some but not for others raises the specter of content and viewpoint censorship." Lakewood, 486 U.S. at 764.

Moreover, the GC's attempt to restrain the banner because of its message renders his interpretation of the statute content-based. Kohn, 289 F. Supp. 2d at 1166-67; Benson, 337 F. Supp. 2d at 1278 ("the NLRB focuses on the Union's *message*"). *See also*, Florida Gulf Coast BCTC, 796 F.2d at 1335, n. 7 ("If the statute is read to prohibit handbilling, that prohibition would clearly be content-based.").[16] Or when the government seeks to restrain expressive activities because of the views expressed or because of who is speaking, such a restriction is content-based and "a content-based restriction [] can stand only if it satisfies strict scrutiny." Playboy, 529 U.S. at 813.

"The Court has long cautioned that, to avoid chilling protected speech, the government **must bear the burden** of proving that the speech it seeks to prohibit is unprotected." Illinois ex rel. Madigan v. Telemarketing Assocs., 538 U.S. 600, 620, fn. 9 (2003) (emphasis added). In order for a statute to meet strict scrutiny, "it must be narrowly tailored to promote a compelling Government interest" and be the "le[ast] restrictive alternative [that] would serve the Government's purpose." Playboy, 529 U.S. at 813. Very few instances exist where the government has actually met strict scrutiny and, here, the GC has not and cannot meet his burden.

---

[16]Because the GC's interpretation is not content-neutral, the Supreme Court's time, place and manner standard is inapplicable. Galvin, 361 F.3d at 1146.

Even if the union's message was coercive, as argued by the GC, it remains fully protected by the First Amendment: "The claim that the expressions were intended to exercise a coercive impact on respondent does not remove them from the reach of the First Amendment. Petitioners plainly intended to influence respondent's conduct by their activities; this is not fundamentally different from the function of a newspaper. See Schneider v. State; Thornhill v. Alabama, 310 U.S. 88 (1940). Petitioners were engaged openly and vigorously in making the public aware of respondent's real estate practices. Those practices were offensive to them, as the views and practices of petitioners are no doubt offensive to others. **But so long as the means are peaceful, the communication need not meet standards of acceptability.**" Organization for a Better Austin v. Keefe, 402 U.S. 415, 419 (1971) (emphasis added). *See also*, Claiborne Hardware Co., 458 U.S. at 910 ("Speech does not lose its protected character . . . simply because it may embarrass others or coerce them into action."); Planned Parenthood v. American Coalition of Life Activists, 290 F.3d 1058, 1073 (9th Cir. 2002) (*en banc*) ("The Court held that there could be no recovery based on intimidation by threats of social ostracism, because offensive and coercive speech is protected by the First Amendment.").

Without any misconduct, the GC's theories fail. *See* Keefe, 402 U.S. at 419; Kohn, 289 F. Supp. 2d at 1167 ("analysis regarding whether the union's activity violates 8(b)(4)(ii)(B) must focus on the union representatives' conduct, and not on their intent or on the content of their speech."); Benson, 337 F. Supp. 2d at 1278 ("the NLRB focuses on the Union's *message*, – that the Union might end up convincing the public to urge businesses not to hire New Star and Okland. This is precisely the argument DeBartolo II rejected."). Indeed, the GC's strained interpretation of "[t]he regulation 'thus slip[s] from the neutrality of time, place, and

29

circumstance into a concern about content.' **This is never permitted.**" Mosley, 408 U.S. at 99 (emphasis added). Nor is it permissible to restrict the viewpoints or message of a labor organization only. Lakewood, 486 U.S. at 764. "[The Supreme] Court has held time and time again: 'Regulations which permit the government to discriminate on the basis of the content of the message cannot be tolerated under the First Amendment.'" Forsyth Co. v. Nationalist Movement, 505 U.S. 123, 135 (1992) (citations omitted).

Because the GC fails to meet strict scrutiny, his theories abridge the First Amendment.

### 3. The "Prior Restraint" Doctrine Precludes Injunctive Relief

"Temporary restraining orders and permanent injunctions, i.e., court orders that actually forbid speech activities - are classic examples of prior restraints." Alexander v. U.S., 509 U.S. 544, 550 (1993). "Any prior restraint on expression comes to this Court with a heavy presumption against is constitutional validity." Keefe, 402 U.S. at 418. "The burden in the prior restraint case is much heavier, due to the fact that expression is presumed protected by the first amendment and prevention is perhaps a more preferred position." Piepenburg v. Cutler, 649 F.2d 783, 789 (10th Cir. 1981). And, "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." Elrod, 427 U.S. at 373.

"The thread running through all these cases is that prior restraints on speech and publication are the most serious and the least tolerable infringement on First Amendment rights. A criminal penalty or a judgment in a defamation case is subject to the whole panoply of protections afforded by deferring impact on the judgment until all avenues of appellate review have been exhausted. Only after judgment has become final, correct or otherwise, does the law's sanction become fully operative." Nebraska Press Ass'n., 427 U.S. at 559.

30

Not surprising then is the fact that neither false speech nor criticism of business practices is compelling enough to justify a prior restraint. Near v. State of Minnesota, 283 U.S. 697, 714 (1932) ("The preliminary freedom extends as much to the false as to the true."); Keefe, 402 U.S. at 418 (in the injunction context, "the courts do not concern themselves with the truth or validity of the publication."); id, 402 U.S. at 418-420 ("No prior decisions support the claim that the interest of an individual in being free from public criticism of his business practices in pamphlets or leaflets warrants use of the injunctive power of a court."); Procter & Gamble Co. v. Bankers Trust Co., 78 F.3d 219, 225 (6th Cir. 1996) ("The private litigants' interest in protecting . . . their commercial self-interest simply does not qualify as grounds for imposing a prior restraint.").

In light of the numerous loses, the GC's showing is this case hardly meets the extraordinarily high burden justifying a prior restraint. Therefore, his request must be denied.

## IV. CONCLUSION

First Amendment considerations and Supreme Court precedent control this case and dictate the analysis employed. As found by four consecutive Article III federal courts, including the Ninth Circuit Court of Appeal and a district court from the Tenth Circuit, and six NLRB administrative tribunals, Respondent's peaceful stationary banner does not violate the Act. This Court, therefore, should deny the GC's request for extraordinary injunctive relief.

DATED: November 29, 2005          DeCARLO & CONNOR
                                  A Professional Corporation


                                  Brian F. Quinn, Esq.
                                  Daniel M. Shanley, Esq.
                                  Attorneys for Respondent MID-ATLANTIC
                                  REGIONAL COUNCIL OF CARPENTERS

31

**PROOF OF SERVICE**

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is: DeCARLO & CONNOR, a Professional Corporation, 533 South Fremont Avenue, Ninth Floor, Los Angeles, California 90071-1706.

On November 29, 2005, I served the foregoing document described as RESPONDENT MID-ATLANTIC REGIONAL COUNCIL OF CARPENTERS' BRIEF IN OPPOSITION TO REQUEST FOR INJUNCTIVE RELIEF on the interested parties in this action by placing a true copy thereof enclosed in a sealed envelope addressed as follows:

James C. Panousos
NATIONAL LABOR RELATIONS BOARD
REGION 5
103 South Gay Street, 8th Floor
Baltimore, MD 21202

Eric Hemmendinger
SHAWE & ROSENTHAL, LLP
20 South Charles Street, 11th Floor
Baltimore, MD 21201

Brian F. Quinn
DeCARLO & CONNOR
101 Constitution Avenue, N W, 10th Floor
Washington, DC 20001

[X]   (UPS/Next Day delivery) I caused such envelope to be placed with the UPS office at Los Angeles, California.

Executed on November 29, 2005, at Los Angeles, California.

I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

_____
Nelly Caywood